# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM FRANCHI, On Behalf of Himself and All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>OCLARO, INC., MARISSA PETERSON, EDWARD COLLINS, GREG DOUGHERTY, KENDALL COWAN, DENISE HAYLOR, IAN SMALL, BILL SMITH, JOEL A. SMITH III, LUMENTUM HOLDINGS INC., PROTA MERGER SUB, INC., and PROTA MERGER, LLC,<br><br>　　　　　　Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on March 12, 2018 (the "Proposed Transaction"), pursuant to which Oclaro, Inc. ("Oclaro" or the "Company") will be acquired by Lumentum Holdings Inc. ("Parent") and Parent's wholly-owned subsidiaries, Prota Merger Sub, Inc. ("Merger Sub") and Prota Merger, LLC ("Merger Sub LLC," and together with Parent and Merger Sub, "Lumentum").

2. On March 11, 2018, Oclaro's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Lumentum. Pursuant to the terms of the Merger Agreement, if the Proposed

Transaction is approved by Oclaro's shareholders and completed, Oclaro shareholders will receive $5.60 in cash and 0.0636 shares of Lumentum for each share of Oclaro common stock they own, subject to certain adjustments as set forth in the Merger Agreement.

3.   On May 17, 2018, defendants filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.   The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.   This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.   Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Oclaro common stock.

9. Defendant Oclaro is a Delaware corporation and maintains its principal executive offices at 225 Charcot Avenue, San Jose, California 95131. Oclaro's common stock is traded on the NASDAQGS under the ticker symbol "OCLR." Oclaro is a party to the Merger Agreement.

10. Defendant Marissa Peterson ("Peterson") has served as Chairman of the Board of Oclaro since June 2013 and has served as a director of Oclaro since July 2011.

11. Defendant Edward Collins ("Collins") has served a director of Oclaro since May 2008.

12. Defendant Greg Dougherty ("Dougherty") has served as Chief Executive Officer ("CEO") of Oclaro since June 2013 and as a director of Oclaro since April 2009.

13. Defendant Kendall Cowan ("Cowan") has served as a director of Oclaro since July 2012.

14. Defendant Denise Haylor ("Haylor") has served as a director of Oclaro since August 2016.

15. Defendant Ian Small ("Small") has served as a director of Oclaro since September 2017.

16. Defendant Bill Smith ("B. Smith") has served as a director of Oclaro since July 2012.

17. Defendant Joel A. Smith III ("J. Smith") has served as a director of Oclaro since April 2009.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of

Parent, and a party to the Merger Agreement.

21. Defendant Merger Sub LLC is a Delaware limited liability company, a wholly owned subsidiary, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Oclaro (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of March 9, 2018, there were approximately 169,931,835 shares of Oclaro common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would

substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. Oclaro is one of the leading providers of optical components and modules for the long-haul, metro and data center markets. Leveraging more than three decades of laser technology innovation and photonics integration, Oclaro provides differentiated solutions for optical networks and high-speed interconnects driving the next wave of streaming video, cloud computing, application virtualization, and other bandwidth-intensive and high-speed applications.

30. Oclaro was incorporated in June 2004. On September 10, 2004, Oclaro became the publicly traded parent company of the Oclaro Technology Ltd (formerly Bookham Technology plc) group of companies, including Oclaro Technology Ltd, a limited company incorporated under the laws of England and Wales whose stock was previously traded on the London Stock Exchange and the NASDAQ National Market under the Bookham name. Effective January 3, 2011, Oclaro common stock was traded on the NASDAQ Global Select Market under the symbol "OCLR."

31. The Company is a supplier of core optical network technology to leading telecommunications and data communications equipment companies and to datacenter and network operators worldwide. It targets communications equipment manufacturers that integrate its optical technology into the switching, routing, and transport systems they offer to the global service and content providers that are building, upgrading, and operating high-performance optical networks. Service and content providers are increasingly demanding greater levels of network

5

capacity from their communications equipment suppliers, Oclaro's primary customers, in order to meet their rapidly growing network bandwidth requirements. This capacity need is being driven by bandwidth intensive applications and devices that are at the access or edge of the network, such as all forms of mobile devices, streaming video, social media and cloud computing.

32. For the years ended July 1, 2017, July 2, 2016 and June 27, 2015, Oclaro's revenues were $601.0 million, $407.9 million, and $341.3 million, respectively. The Company had net income of $127.9 million and $8.6 million for the years ended July 1, 2017 and July 2, 2016, respectively, and incurred a net loss of $56.7 million for the year ended June 27, 2015. As of July 1, 2017, July 2, 2016 and June 27, 2015, Oclaro's total assets were $665.1 million, $359.0 million, and 325.9 million, respectively.

33. On March 11, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Lumentum. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Oclaro's shareholders and completed, Merger Sub will merger with and into Oclaro, followed by a merger of Oclaro with and into Merger Sub LLC, with Merger Sub LLC continuing as a wholly-owned subsidiary of Parent.

34. Upon completion of the merger, each outstanding share of Oclaro common stock will be converted into the right to receive $5.60 in cash and 0.0636 of a share of Parent common stock, subject to the conditions and restrictions set forth in the Merger Agreement. The maximum number of shares of Parent common stock that will be issued in connection with the merger is equal to 19.9% of the issued and outstanding shares of Parent common stock as of immediately prior to the effective time (the "Stock Threshold"). To the extent that the number of shares of Parent common stock issuable in the merger would exceed the Stock Threshold, the ratio of shares of Parent common stock issued as stock consideration will be reduced such that the Stock

Threshold is not exceeded, and the cash consideration per share of Oclaro common stock will be increased by an amount representing the difference between the initial exchange ratio and the exchange ratio following the adjustment.

> 35. According to the press release announcing the Proposed Transaction:
>
> Lumentum Holdings Inc. ("Lumentum" or the "Company"), a leading provider of photonics products for optical networking and lasers for industrial and consumer markets, and Oclaro, Inc. ("Oclaro"), a leader in optical components and modules for the long-haul, metro, and data center markets, today announced that the two companies have signed a definitive agreement, unanimously approved by the boards of directors of both companies, pursuant to which Lumentum will acquire all of the outstanding common stock of Oclaro. For each share of Oclaro stock held, Oclaro stockholders will be entitled to receive $5.60 in cash and 0.0636 of a share of Lumentum common stock, subject to the terms of the definitive agreement. The transaction values Oclaro at $9.99 per share or approximately $1.8 billion in equity value, based on the closing price of Lumentum's stock on March 9, 2018, of $68.98. The transaction value represents a premium of 27% to Oclaro's closing price on March 9, 2018 and a premium of 40% to Oclaro's 30 day average closing price. Oclaro stockholders are expected to own approximately 16% of the combined company at closing. . . .
>
> The transaction is expected to generate more than $60 million of annual run-rate synergies within 12 to 24 months of the closing and be immediately accretive to non-GAAP earnings per share.
>
> Lumentum intends to fund the cash consideration with a combination of cash on hand from the combined companies' balance sheets and $550 million in debt financing. The transaction is expected to close in the second half of calendar 2018, subject to approval by Oclaro's stockholders, antitrust regulatory approval in the US and China, and other customary closing conditions.
>
> Board of Directors
>
> One member of Oclaro's Board of Directors, as mutually determined, will join Lumentum's Board of Directors upon the closing of the transaction.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

36. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

37. The Registration Statement omits material information with respect to the Proposed

Transaction, which renders the Registration Statement false and misleading.

38.     The Registration Statement omits material information regarding the Company's financial projections, Parent's financial projections, and the valuation analysis performed by the Company's financial advisor in connection with the Proposed Transaction, Jefferies LLC ("Jefferies").

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     The Registration Statement discloses certain projections of Oclaro for non-GAAP (generally accepted accounting principles) metrics that were used by Jefferies to perform its valuation analyses in connection with the Proposed Transaction.  Specifically, the Registration Statement discloses non-GAAP projections of Non-GAAP Operating Income, Adjusted EBITDA, Free Cash Flow, Unlevered Free Cash Flow, and Adjusted EPS.  The Registration Statement, however, fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

41.     To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most

comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Registration Statement that:

> The Oclaro Projections include non-GAAP financial measures. Non-GAAP financial measures are not prepared in accordance with GAAP and should be considered as a supplement to, not a substitute for, or superior to, the corresponding measures calculated in accordance with GAAP. The Oclaro Projections may differ from published analyst estimates and forecasts and do not take into account any events or circumstances after the date they were prepared, including the announcement of the Merger.

42. The Registration Statement further states that: "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Oclaro may not be comparable to similarly titled amounts used by other companies." As such, Oclaro's stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

43. The Registration Statement indicates that, in arriving at its fairness opinion, Jefferies reviewed, among other things, "certain information furnished to Jefferies by Lumentum's management, including financial forecasts and analyses, relating to the business, operations and prospects of Lumentum." Moreover, in performing its comparable companies analysis of Lumentum, Jefferies used Parent's 2018 Adjusted EPS projections as provided by Parent management, and Parent's 2018 and 2019 Adjusted EPS projections based on consensus median research analysts' estimates. The Registration Statement, however, fails to, but must, disclose these financial projections of Parent used on Jefferies' analyses. This information is material to Oclaro's stockholders, who are faced with a decision of whether to approve the Proposed Transaction and receive cash and Parent stock for their shares, or reject the Proposed Transaction and remain stockholders in the standalone Oclaro. Without this information, stockholders are

being misled into believing that the merger consideration is fair.

44. With respect to Jefferies' Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the line items used to calculate the Company's projections of unlevered free cash flows for years 2018 through 2022; (ii) the specific numerical inputs and assumptions underlying the discount rates range of 11.0% to 13.0% selected by Jefferies; (iii) the terminal exit multiples implied by Jefferies' analysis; (iv) projected total debt; and (v) projected cash and cash equivalents. The failure to disclose this information causes the Registration Statement to be misleading in that it makes the merger consideration appear fair.

45. With respect to Jefferies' Selected Publicly Traded Companies Analysis and its Selected Transactions Analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions observed by Jefferies in its analyses. Notably, defendants failed to disclose the mean multiple of the selected companies and transactions observed by Jefferies and the Board in Jefferies' analyses. Without this material information, stockholders cannot make an informed decision about whether the multiples ranges selected by Jefferies were truly representative of the selected companies' and transactions' multiples. The failure to disclose the individual multiples and financial metrics of the selected companies and transactions therefore was a material omission and renders the Registration Statement materially misleading by wrongly implying that Jefferies' analyses support the fairness of the merger consideration.

46. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Opinion of Oclaro's Financial Advisor; and (ii) Certain Unaudited Prospective Financial Information.

47. The Registration Statement omits material information relating to the background leading to the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

48. The Registration Statement states that, in December 2017, Oclaro entered into nondisclosure agreements with Company D and Company F, but defendants failed to disclose the terms of those nondisclosure agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prevents the counterparties from acquiring the Company's stock or requesting a waiver of the standstill provision. Notably, it is likely that the nondisclosure agreements do contain such provisions, because the Registration Statement indicates that Oclaro "provided a nondisclosure agreement for Company A that contained a standstill provision," but Company A refused to enter into a nondisclosure agreement that contained a standstill provision. Moreover, the Board agreed to Section 6.1(b) of the Merger Agreement, which provides that the Company "agrees not to grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of its Subsidiaries, and shall use reasonable best efforts to enforce each such agreement."

49. If the nondisclosure agreements with Company D and Company F do contain standstill and "don't ask, don't waive" provisions, the Registration Statement is misleading in that it leads stockholders to believe that the interested parties are free to submit a superior offer to acquire Oclaro. Stockholders would find this information material in deciding whether the Proposed Transaction with Lumentum is the best transaction that the Board could have obtained.

50. The omission of this material information renders the Background of the Merger section of the Registration Statement false and misleading.

51. The Registration Statement omits material information regarding potential conflicts of interest of the Company's executive officers. Specifically, the Registration Statement fails to disclose whether any of the Company's executive officers will continue to be employed by Parent following the close of the Proposed Transaction. In the press release announcing the Proposed Transaction, Parent's President and CEO, Alan Lowe, stated: "We are delighted to welcome the talented Oclaro team to Lumentum and look forward to a swift completion of the transaction with a focus on supporting our customers and delivering shareholder value." Further, Oclaro's CEO, Dougherty, stated "I am extremely proud of what the Oclaro team has accomplished over the last five years. We have enjoyed tremendous success and this combination will create even more exciting opportunities for the team."

52. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. Without this material information, the Registration Statement is false and misleading.

53. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; and (ii) Interests of Oclaro's Directors and Executive Officers in the Merger.

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

# COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Oclaro

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Oclaro is liable as the issuer of these statements.

57. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

58. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

59. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

60. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Lumentum

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants and Lumentum acted as controlling persons of Oclaro within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Oclaro and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65. Each of the Individual Defendants and Lumentum was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

67. Lumentum also had direct supervisory control over the composition of the

Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

68. By virtue of the foregoing, the Individual Defendants and Lumentum violated Section 20(a) of the 1934 Act.

69. As set forth above, the Individual Defendants and Lumentum had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated: May 30, 2018 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Brian D. Long* |
| | Brian D. Long (#4347) |
| | Gina M. Serra (#5387) |
| | 300 Delaware Avenue, Suite 1220 |
| **OF COUNSEL:** | Wilmington, DE 19801 |
| | Telephone: (302) 295-5310 |
| **RM LAW, P.C.** | Facsimile: (302) 654-7530 |
| Richard A. Maniskas | Email: bdl@rl-legal.com |
| 1055 Westlakes Drive, Suite 300 | Email: gms@rl-legal.com |
| Berwyn, PA 19312 | |
| Telephone: (484) 324-6800 | *Attorneys for Plaintiff* |
| Facsimile: (484) 631-1305 | |
| Email: rm@maniskas.com | |